THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Douglas R.
 Clark, Petitioner
 v.
 State of South Carolina, Respondent
 
 
 

Appeal From Greenville County
John C. Few, Circuit Court Judge
Unpublished Opinion No. 2007-UP-411
 Submitted September 1, 2007  Filed October 4, 2007

AFFIRMED

 
 
 
 Assistant Appellate Defender Robert M. Pachak, of Columbia, for Petitioner.
 Attorney General Henry Dargan McMaster; Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and
 Assistant Attorney General Karen Ratigan, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  Douglas
 R. Clark appeals the denial of his petition for post-conviction relief (PCR). 
 We affirm.[1]  
BACKGROUND FACTS
On
 June 16, 1998, Cosette Lemon arrived at her apartment at about 11:15 p.m.  As
 she entered her home with a hamper of clothes, she pushed the door closed, but
 did not get it shut all the way.  She put the hamper down in her living room
 and then went to lower some blinds.  She heard a sound at the door, but thought
 it was her boyfriend, Terry Shackett who usually came home from work about that
 time.  As she turned, she saw the profile of a man standing in the door.  The
 man told Lemon her boyfriend told him to come on in.  As Lemon looked toward
 the kitchen, the man grabbed her, jerked her around, and shoved her face down
 into the couch.  He pulled her up off the couch and told her they were going to
 the bedroom.  He pushed her down on the bed and was choking her.  He grabbed a
 pillow case and told her to put it in her mouth.  He then tied it behind her
 head and instructed her to put her hands behind her back and tied her hands. 
 He also tied her ankles together.  He asked Lemon if she had any money and told
 her he might have to cut her if she lied.  About that time, Lemon heard someone
 at the door.  Lemon heard the intruder running and called out to her boyfriend
 to warn him.  After she was able to free herself, she ran into the kitchen, and
 saw her boyfriend chasing the man around the corner of the building.
Shackett
 testified he arrived at the apartment he shared with Lemon at about 11:25. 
 When he opened the screen door, he noticed the main door was open and realized
 something was not right.  Suddenly, the door jerked open and he saw a black
 male standing in the doorway.  Shackett grabbed the man, and the intruder
 pushed Shackett to the side and began running.  Shackett gave chase, but was
 unable to keep up with the intruder. 
Lemon
 described the intruder to police as a light-skinned black man with short hair,
 between twenty and thirty years old, weighing around one hundred and
 seventy-five pounds and about five-nine or five-ten in height.  The day after
 the incident, Lemon and Shackett went to the police station and helped put
 together a composite by use of an identi-kit.[2]  They were not satisfied with the results of that composite, and later met with
 a sketch artist and put a new composite together.  Both Lemon and Shackett felt
 the sketch artists composite looked very similar to the intruder. 
Four
 or five nights after the incident, Lemon and Shackett were shown two different
 photo lineups.  Lemon was unable to identify anyone from the first lineup.  In
 the second one, she indicated one of the individuals looked more similar than
 any of the others, but she was not able to make a positive identification.  Shackett
 likewise picked one individual from one of the lineups as looking similar to
 the intruder, but was not sure.  Both Lemon and Shackett had pointed out the
 same person
Using
 the sketch artists composite, the police began a surveillance of the area near
 Lemons apartment.  On the evening of June 24, officers observed a black male who
 looked just like the composite walking in the area.  That person was identified
 in court as Clark.  Clarks picture was then placed in a third photographic lineup
 and was shown to both Lemon and Shackett.  Lemon felt strongly that Clarks picture looked like the suspect, but she could not be absolutely sure.  Lemon
 indicated she had seen the intruders profile, and because it was dark and she
 had only seen his face for a few seconds, she felt she could better identify
 someone if she saw him in person.  However, the police informed her they could
 not do that.  When Shackett was shown the third lineup, he immediately picked
 out Clark as the intruder.  He testified he had no doubt this was the person. 
 He then made an in-court identification of Clark as the intruder.  
Lemon
 testified she went to Clarks bond hearing, and at that time she observed Clark facing exactly the way he was in her apartment.  She stated she was looking at the
 floor when she realized there was a man in shackles standing there.  When she
 looked up and saw him facing that way, a chill went over her, and she realized
 it was the intruder.  She testified she did not realize Clark would be at the bond
 hearing, and when she looked up and saw him, it caught her by surprise.  Lemon
 identified Clark in court as the person who was in her apartment that night. 
 
The
 evidence of record shows Clark was actually thirty-eight or thirty-nine years
 old, was about five feet five inches tall and weighed approximately one hundred
 and thirty-eight pounds.  The officer who arrested him testified, however, Clark did not look his age and he looked heavier than his actual weight.
On
 direct appeal, Clark argued the court erred in failing to suppress Lemons
 in-court identification of him.  This court affirmed.
POST-CONVICTION RELIEF
In his hearing on the application for PCR, Clark argues defense
 counsel was ineffective at trial in failing to object to a portion of the solicitors
 closing argument that allegedly vouched for and bolstered the credibility of
 the witnesses.
At trial, Lemon testified she was very hesitant to finger anyone
 because [she] saw [the perpetrator] so briefly and [she] wanted to be
 absolutely sure. . . .  Lemon believed if she saw the perpetrator in person
 and could see a profile, she would be able to state with certainty if the
 suspect was the perpetrator.  She requested an in-person lineup, stating she
 certainly didnt want to pick someone who was not the man.  On
 cross-examination, she repeated that she wanted to see the men in the photo
 lineups in person as she didnt feel good about fingering anybody and
 whenever [she] was shown a lineup, [she] did not feel comfortable saying
 absolutely sure that it was anyone in those pictures because [she] wanted to be
 absolutely sure.  Lemon further testified:  I remember thinking all at the
 same time I certainly dont want someone innocent to be charged with this
 crime.  At the bond hearing, Lemon witnessed Clark facing exactly the same
 way he was in [the] apartment.  She identified Clark.  Shackett likewise
 explained his hesitancy about identifying someone if he was not certain,
 testifying:  [O]f course, I dont want any innocent person being accused. . .
 . if Im not a hundred percent sure, . . . I cant pick one out.  

 During closing
 arguments, the solicitor stated:
 
 Websters
 dictionary defines reliability as the ability to rely on or to depend on.  In
 this case you had an opportunity to see the definition of the reliability from
 the witness stand with two people, Cosette Lemon and Terry Shackett.  Those two
 people told you time and time again, as did the police officers who met with
 them, that from the beginning of this case to the very end they said, I dont
 want to pick the wrong guy, I want to be careful, I want to make sure an
 innocent man is not arrested for this charge.  Over and over and over.  They
 were fearful.  They were careful.  They were dependable.  They were real.  They
 were honest.  And, again, in this courtroom yesterday they did all of those
 same things and you had an opportunity to see the definition of the reliability
 from that witness stand.  
 

(emphasis added).  Trial
 counsel did not object.  
At
 the PCR hearing, trial counsel, the PCR judge, and the assistant attorney
 general all conceded that stating the two witnesses were honest was the
 improper opinion of the solicitor.  Ultimately, however, the PCR judge found:  [w]hile
 the statement that they were honest could be construed as vouching for the
 credibility of the witnesses, such a statement also could be reasonably
 construed as highlighting the good-faith effort during the identification
 processan effort about which the witnesses themselves had testified.  Accordingly,
 the PCR judge denied Clarks claim for ineffective assistance of counsel.  
STANDARD OF REVIEW
The appellate court gives great deference to the post-conviction relief courts findings of fact and
 conclusions of law.  Dempsey v. State, 363 S.C. 365, 368-69, 610 S.E.2d
 812, 814 (2005).  On review, a
 PCR judges findings will be upheld if there is any evidence of probative value
 sufficient to support them.  Cherry v. State, 300 S.C. 115, 119, 386
 S.E.2d 624, 626 (1989).  
LAW/ANALYSIS
In
 order to establish a claim of ineffective assistance of counsel, a PCR
 applicant must prove that:  (1) counsels performance was deficient, and (2)
 the deficient performance prejudiced the applicants case.  Id.  To show
 that counsel was deficient, the applicant must establish that counsel failed to
 render reasonably effective assistance under prevailing professional norms.  Id.  To show prejudice, the applicant must show that but for counsels errors, there
 is a reasonable probability the result of the trial would have been different.  Johnson
 v. State, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997).  A reasonable
 probability is a probability sufficient to undermine confidence in the outcome
 of trial.  Id.
During trial, a
 solicitor cannot vouch for the credibility of a witness by expressing or
 implying his personal opinion concerning a witness truthfulness.  State v.
 Shuler, 344 S.C. 604, 630, 545 S.E.2d 805, 818 (2001).  Additionally, [i]t is inappropriate for the State to assure the jury
 of a witness credibility, because the jury is charged with assessing the
 credibility of witnesses based on evidence in the record.  Matthews v.
 State, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002). 
We find even if
 Clarks counsel was ineffective in failing to object to the solicitors
 comments, there is no reasonable probability the jurys verdict would have been
 different and therefore there is no prejudice to Clark.  See Johnson,
 325 S.C. at 186, 480 S.E.2d at 735 (finding no prejudice where the result of
 the trial would not likely have been different).  Standing alone, the statement,
 [t]hey were honest, could be inappropriate as vouching for the credibility of
 witnesses.  However, in this case, we agree with the PCR judges conclusion
 that the solicitors comments were generally based on the witnesses testimony,
 in which they described their concern about misidentifying the perpetrator.  The
 substance of the solicitors closing argument reminded the jury of the
 diligence and hesitation with which the victims approached the identification
 process.  The solicitor was not talking about the witnesses credibility on the
 witness stand but was summarizing their testimony, which described their
 conscientious manner throughout the investigation of the crime.  Because we
 find the comment did not prejudice Clark, Clark has not met his burden of
 demonstrating he was deprived of a fair trial.  Accordingly, the order denying Clarks petition for PCR is
AFFIRMED.
HUFF and
 STILWELL, JJ., and GOOLSBY, A.J., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] An identi-kit allows police to create a
 composite image of a suspect based on verbal descriptions using preprogrammed
 feature images.